UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

DONNA MARBREY                                                                                              PLAINTIFF

v.                                                                         CIVIL ACTION NO. 3:10-CV-00504

JEWISH HOSPITAL AND
ST. MARY'S HEALTHCARE, INC.                                                                      DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on the motion of the defendant, Jewish Hospital and St. Mary's Healthcare, Inc. ("JHSMH") for summary judgment (DN 26). For the following reasons, that motion will be granted.

### BACKGROUND

Plaintiff Donna Marbrey brought this action against JHSMH for alleged violations of the Family and Medical Leave Act ("FMLA"). The parties have submitted to the court evidence showing the following: Marbrey was hired by JHSMH in May 2008 to work as a Medical Assistant in the physician groups that made up JHSMH. Initially, Marbrey was hired to work on a PRN, or "[a]s needed," basis, working at whatever medical office needed her on any particular day. But, in September 2008, Murphy interviewed and was hired for a full-time position at the Murphy and Wheeler medical office, which was a part of JHSMH. Around the time that Marbrey was hired full-time to work at Murphy and Wheeler, she received a JHSMH 90-Day Introductory Appraisal, which stated that she was progressing satisfactorily, met performance and productivity expectations, and was not in need of any additional training.

When Marbrey began working full-time at Murphy and Wheeler, she and another Medical Assistant, Tambra Ruckle, assisted Drs. Murphy and Wheeler. Another physician, Dr. Venhoff, later came into the practice, along with a Medical Assistant, Dana Rayman. Marbrey primarily worked with Dr. Murphy, but assisted the other doctors, too. Her supervisor at Murphy and Wheeler was Jessica Strattman.

Around August of 2009, Marbrey began experiencing weakness in her left side.[1] Accordingly, she requested FMLA leave. MetLife, JHSMH's FMLA administrator, approved Marbrey's leave request, and she was granted continuous FMLA leave from August 9, 2009 until September 17, 2009. MetLife later approved intermittent FMLA leave of 20 days per year beginning September 18, 2009 and running through September 17, 2010.

Strattman and Holly Cooley, a Human Resources Consulstant for JHSMH, were made aware, via an email from an HR assistant at JHSMH, that Marbrey had been approved for intermittent FMLA leave following her period of continuous FMLA leave. Strattman asked Marbrey to take her FMLA leave on Wednesdays, when Dr. Wheeler was not in the office. Marbrey thought that comment was "negative" because it was "stressful" trying to schedule her doctors' appointments only on Wednesdays. However, Marbrey was mostly able to comply with Strattman's request, although not always. Strattman said nothing else negative to Marbrey about her FMLA leave.

---

[1] Marbrey explained that she initially had a headache, and then her left side got numb, causing Dr. Murphy to suggest she go to the emergency room. At St. Mary's Hospital, the medical staff thought she might be having a stroke. Her lab work was abnormal. Dr. Murphy believes that Marbrey had a circulatory problem, but she never received an official diagnosis as to her condition.

On September 24, 2009, shortly after Marbrey returned from her continuous FMLA leave, Marbrey received a performance evaluation from Strattman. The evaluation indicated that Marbrey was doing a satisfactory job in her position at Murphy and Wheeler.

In January of 2010, Marbrey started experiencing weakness on her right side. Upon going to the doctor, she found out that she had urology issues and needed a bladder surgery. Accordingly, she again sought continuous FMLA leave, which MetLife again approved. Marbrey was on continuous FMLA leave from January 6 to February 19, 2010. After that, Marbrey returned to her full-time position with Murphy and Wheeler at the same rate of pay and schedule, and with the same job responsibilities.

In February 2010, Dr. Wheeler was diagnosed with cancer and took a leave of absence from the practice. Denise Cissell, a supervisor for JHSMH to whom Strattman reported, met with Murphy and Wheeler staff members, including Marbrey, and informed them that Dr. Wheeler's patients would be referred to another practice.

Around late March of 2010, Marbrey heard on the news that JHSMH was downsizing and was going to lay off 500 employees. Between that and the fact that Dr. Wheeler was leaving, Marbrey was concerned about her position at Murphy and Wheeler and thus requested to meet with Cissell. At that meeting, Marbrey asked whether the downsizing would affect her position at Murphy and Wheeler. Cissell told her it would not, stating that JHSMH had already completed the downsizing and the employees of Murphy and Wheeler were "okay." Cissell told Marbrey that she had "nothing to worry about."

Additionnally, in March of 2010, Cissell had a separate meeting with Marbrey, where she told Marbrey that Marbrey was going to receive an "occurrence" for some days that Marbrey had

missed. Marbrey responded that she should not be penalized for missing those days because she had FMLA leave. Cissell stated that she was unaware of that FMLA leave and asked Marbrey to bring in documentation. Marbrey was unable to find a copy of her letter from MetLife approving her intermittent FMLA leave, so she requested a copy. MetLife sent Marbrey a letter dated March 30, 2010, confirming that Marbrey had been approved for intermittent FMLA leave for 20 days per year from September 18, 2009 until September 17, 2010.

On April 7, 2010, Marbrey went to work in the morning. There, she told Strattman that she had brought the MetLife letter approving her FMLA leave to provide to Cissell. Strattman took the letter from Marbrey, went in her office, and closed the door.

At around 1:00 that day, Cissell and Cooley took Marbrey into Dr. Murphy's office and informed her that she was being terminated due to downsizing. When Marbrey asked Cissell about Cissell's earlier comments that Marbrey's job would not be affected by the downsizing, Cissell stated, "Well, I may have said it, but it is going to affect [it]." Marbrey asked if they used seniority to make the decision, and Cissell and Cooley stated they had. Marbrey questioned that because Marbrey believed that she had more seniority than Dana Rayman, but Cooley informed Marbrey that Rayman had three or four more months of seniority than Marbrey. Marbrey asked Cooley if there were any job openings within JHSMH, stating that she would go anywhere that JHSMH would send her, including to medical offices that were 45 minutes away. However, Cooley told Marbrey that JHSMH had downsized and could not transfer Marbrey into another position. Cooley never told Marbrey that she was not allowed to apply for another position with JHSMH.

For its part, JHSMH explains that the decision to terminate Marbrey was based on a determination that, after Dr. Wheeler went on a leave of absence, Murphy and Wheeler was overstaffed at the Medical Assistant position and a reduction in force ("RIF") was necessary. JHSMH has a policy governing RIFs, which states that it is designed to be fair and equitable to team members while also meeting the goal of providing high-quality and economically sound health care to patients. Pursuant to the policy, the reduction is first made from temporary team members and secondarily from team members in their introductory period of employment. After that, JHSMH looks to terminate "documented poor performers." None of the three Medical Assistants at JHSMH fit into any of those those categories. Accordingly, JHSMH went to the final category of the RIF policy, which is to terminate employees based on seniority. In the case of Murphy and Wheeler, Ruckle had been hired by JHSMH in 2003, Rayman in February 2008, and Marbrey in May 2008. Thus, Marbrey was terminated for having the least seniority. According to Cooley, Marbrey's termination had nothing to do with her FMLA leave.

After Marbrey was terminated, she looked for jobs on the internet. On the job search section of a website, "www.abso.com," Marbrey saw multiple JHSMH jobs for which she was qualified, some full-time and some part-time. Marbrey attempted to submit an application for a JHSMH job, but was unable to do so because the website would "kick [her] out."

While Marbrey's last day of work was April 7, 2010, the day she was terminated, she continued to receive her salary through April 21, as well as compensation for any accumulated paid time off. JHSMH also offered Marbrey extra severance pay in exchange for an agreement by Marbrey to waive all claims or potential claims she may have had against JHSMH. Marbrey retained counsel and decided not to accept the offer.

Meanwhile, on March 5, 2010, prior to her termination at JHSMH, Marbrey filed for Chapter 13 bankruptcy. Marbrey did not mention any possible claims against JHSMH in her initial petition, nor did Marbrey make any supplement to her petition concerning her claims against JHSMH after she was notified that she was being terminated. On April 28, 2010, the Bankruptcy Court entered an order confirming Marbrey's Chapter 13 Plan. Marbrey filed this lawsuit against JHSMH on July 20, 2010. She did not seek to supplement her bankruptcy petition at that point either. Marbrey has submitted an affidavit from her bankruptcy attorney, Tracy Hirsch, stating that both she and the Chapter 13 trustee "were made aware of the [JHSMH] lawsuit." Hirsch's affidavit also set forth her belief that Marbrey was not required to disclose her lawsuit against JHSMS because the cause of action arose after the filing of her bankruptcy petition and, according to Hirsch, the United States Bankruptcy Code did not require supplementation of a bankruptcy petition to note a civil lawsuit.

## ANALYSIS

To prevail on a motion for summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact arises when there is sufficient evidence on which the jury could reasonably find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). The disputed issue does not need to be resolved conclusively in favor of the non-moving party, but that party must present sufficient probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968). The evidence

must be construed in the light most favorable to the non-moving party. *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

JHSMH has moved for summary judgment on two principal grounds: 1) that Marbrey cannot produce sufficient evidence to sustain her claim under the FMLA; and 2) that Marbrey is judicially estopped from asserting her claim against JHSMH because she failed to identify the claim as an asset in Bankruptcy Court. Because JHSMH is correct that Marbrey does not have sufficient evidence to sustain her FMLA claim, this court will not address JHSMH's judicial estoppel argument.

The FMLA entitles eligible employees to 12 workweeks of leave during any 12-month period because of, *inter alia*, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "There are two recovery theories available under the FMLA: the interference theory, pursuant to 29 U.S.C. § 2615(a)(1), and the retaliation theory, pursuant to 29 U.S.C. § 2615(a)(2)." *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446 (6th Cir. 2007) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)). In Marbrey's complaint, she claims that JHSMH terminated her position and declined to transfer her to another position "in an attempt to interfere with, restrain, or deny the exercise of or the attempt to exercise her rights under the FMLA in direct and willful violation of 29 U.S.C. § 2615(a)(1)." Thus, Marbrey's complaint specifies that her claim arises under the interference theory.

Marbrey contends that JHSMH retaliated against her–by terminating her–because she took FMLA leave. JHSMH first argues that such a theory falls under the retaliation theory of 29 U.S.C. § 2615(a)(2), not the interference theory of subsection (a)(1). JHSMH asserts that

because Marbrey's complaint identified her claim as arising from subsection (a)(1) and not subsection (a)(2), she failed to give notice of her claim that she was fired in retaliation for taking FMLA leave and she should accordingly be precluded from raising that claim now. That argument is easily disposed of. In *Wysong v. Dow Chemical Company*, the Sixth Circuit held that an employee's "claim that she was terminated for taking FMLA leave is cognizable under the (a)(1)-interference theory." 503 F.3d at 446 (citing *Chandler v. Specialty Tires of Am. (Tenn.), Inc.*, 283 F.3d 818, 825 (6th Cir. 2002)). Having resolved that initial issue, the court now turns to an assessment of the sufficiency of the evidence supporting Marbrey's cause of action.

As both parties note, under the interference theory, an employee must establish the following:

> (1) he is an "[e]ligible employee," 29 U.S.C. § 2611(2); (2) the defendant is an "[e]mployer," 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which he was entitled.

*Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). There is no dispute that Marbrey was an eligible employee, that JHSMH was an employer under the FMLA, and that Marbrey was entitled to leave under the FMLA. Nor is it in question that Marbrey gave notice of her intention to take leave; indeed, she actually took FMLA leave. The real dispute here is whether JHSMH denied Marbrey her FMLA benefits.

In *Wysong*, which involved a claim of retaliation for having exercised FMLA rights, the Sixth Circuit approved of the use of the following language to examine the fifth element: whether the employer "somehow used the leave against her and in an unlawful manner, as provided in either the statute *or* regulations." 503 F.3d at 447. The Sixth Circuit continued by

noting that 29 C.F.R. § 825.220(c) prohibited employers from using "the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." *Id.* Thus, the Sixth Circuit held, "If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." *Id.*

Accordingly, the question is whether JHSMH took an employment action based, at least in part, on the fact that Marbrey took FMLA leave. Marbrey puts forth the following chain of events that she insists is sufficient to find that she was fired, at least in part, for taking FMLA leave: Strattman made "negative comments" about Marbrey's FMLA leave; Marbrey received satisfactory employment evaluations; Marbrey was assured that JHSMH's downsizing would not affect her position shortly before she was terminated; Marbrey gave her letter concerning her FMLA leave approval to Strattman on the same day she was terminated; and Marbrey was told that there were no open positions at JHSMH when she was terminated but subsequently found out that there were open positions. However, as will be explained below, the evidence, viewed in the light most favorable to Marbrey, is insufficient to conclude that her FMLA leave played any part in her termination.

First, this court will address the supposedly "negative comments" that Strattman made to Marbrey. Those comments, by Marbrey's own admission at her deposition, were nothing more than a request for Marbrey to attempt to schedule her intermittent FMLA leave on Wednesdays because that was when Dr. Wheeler was out of the office. Under the FMLA regulations, an employee who needs leave intermittently is required to "make a reasonable effort to schedule the treatment so as not to disrupt unduly the employer's operations." 29 C.F.R. § 825.203.

Strattman's request for Marbrey to schedule her treatment on Wednesdays is perfectly in line with what the regulations require of Marbrey. Accordingly, while Marbrey felt that it was "stressful" trying to comply with Strattman's request, there is no reasonable interpretation of Strattman's request that allows for the conclusion that she was evincing any sort of ill will toward Marbrey for taking FMLA leave. Thus, the supposedly "negative comments" upon which Marbrey attempts to rely in support of her claim are of no evidentiary value.

Turning to the remaining evidence, the only possible connection between Marbrey's termination and her FMLA leave is the fact that, on the morning of the day she was terminated, she provided to Strattman a letter to give to Cissell stating that leave Marbrey had previously taken had been FMLA-approved. Marbrey argues that the proximity in time between her handing in the letter and her being fired is sufficient for the conclusion that the firing was due to her exercise of her FMLA rights.

The court disagrees. The last day of Marbrey's FMLA leave prior to her termination was February 14, 2010, more than one and one-half months before the termination. As noted above, the only comment about Marbrey's FMLA leave that anyone at JHSMH made was Strattman's perfectly legitimate request that Marbrey try and schedule her intermittent FMLA leave at a time that was most convenient for Murphy and Wheeler. There is nothing in the record to indicate that, at any point during the six-month period that Marbrey was actually taking her FMLA leave, JHSMH did anything to interfere with Marbrey taking FMLA leave or that anybody at JHSMH in any way disapproved of her use of FMLA leave. Further, there is nothing in the record to indicate that Marbrey would need FMLA leave in the future or that JHSMH believed that Marbrey was intending to take such leave in the future. Simply put, it would not be reasonable

for a fact-finder to conclude, based solely on the fact that Marbrey presented a letter to JHSMH concerning her previously-approved and previously-taken FMLA leave on the day she was terminated, that Marbrey's firing was based, in whole or in part, on her exercise of her rights under FMLA.

None of the other evidence Marbrey points to serves to make the connection between her termination and her prior use of FMLA leave any stronger. That Marbrey was told that her position was safe from downsizing shortly before she was terminated, and that she was told that there were no open positions at JHSMH when she was fired but found job postings for positions at JHSMH shortly after her firing, at most suggest that JHSMH handled her termination poorly and did not want to transfer her to another position rather than firing her. But the question is not whether JHSMH was required to attempt to transfer Marbrey or should have been up front about the possibility of her being terminated. Instead, the question is whether Marbrey's use of FMLA was, at least in part, a factor in JHSMH's decision to terminate her. And, as explained above, the court finds that the only connection between Marbrey's FMLA leave and her termination–that she provided JHSMH the letter concerning her previously-approved and previously-taken FMLA leave on the day she was terminated–is too insubstantial for a reasonable jury to find that her usage of FMLA leave during a six-month period that ended one and one-half months before she was terminated played any part in the decision to terminate her.

## CONCLUSION

The evidence put forth by Marbrey is insufficient for a reasonable jury to conclude that her usage of FMLA leave was a factor in JHSMH's decision to terminate her. Accordingly, JHSMH's motion for summary judgment will be granted.

A separate order will issue in accordance with this opinion.

August 9, 2012

Charles R. Simpson III, Judge
United States District Court

D03